**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CAITLAN SHOOP, individually and on
behalf of all
others similarly situated,

                Plaintiffs,

    v.

JUSTICEWORKS YOUTHCARE, INC.,
a Pennsylvania Corporation

                Defendant.

CIVIL ACTION

No. 2:21-cv-00732-MJH

## **DEFENDANT'S BRIEF IN OPPOSITION TO CONDITIONAL CERTIFICATION**

The Defendant, JusticeWorks YouthCare, Inc. ("JusticeWorks"), by and through its undersigned counsel, files the within Defendant's Brief in Opposition to Conditional Certification as follows: JusticeWorks incorporates its Response in Opposition to Conditional Certification ("Response") as if fully set forth herein.

## **INTRODUCTION**

In this case, Plaintiffs have yet even to find – and stick with – a clear unifying theory of recovery or a claim, so they seek conditional class certification as a means to conduct an on-going expedition for a collective claim that they have yet to discover. Plaintiffs' request to conditionally certify a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), ("FLSA"), should be therefore denied because Plaintiffs have failed to make even a modest factual showing that the similarly situated standard is met. Although it is typically not a high bar at the conditional certification phase, conditional certification is not automatic, contrary to Plaintiffs' characterization. Such is especially true where, as here, the parties have conducted significant discovery.  Discovery has only highlighted both the Plaintiffs' failure to articulate a true claim and

1

the disparity in Plaintiffs' job duties, job sites, allocation of work time, and supervisors (who actually make all overtime decisions). Moreover, the Plaintiffs' proposed order itself is objectionable and offers further evidence of the Plaintiffs' intent to misuse this proceeding as a fishing expedition.

## FACTUAL BACKGROUND

JusticeWorks' Response in Opposition sets forth the factual background in this matter in detail, with record citations. For purposes of this Brief in Opposition, JusticeWorks underscores the following, not as a suggestion that this Court should rule on the merits of the case, but to provide the foundation for the legal arguments and distinctions set forth in this Brief in Opposition:

- This action concerns full-time Family Resource Specialists ("FRSs") who are or were employees of JusticeWorks. Procedurally, this case has been pending for ten months. During that time, Plaintiffs have filed an original Complaint alleging that JusticeWorks had misclassified its full-time FRSs as "exempt" under the FLSA and, therefore, JusticeWorks owes the FRSs overtime payments. Indisputably, the allegation of misclassification was untrue. Next, Plaintiffs filed a First Amended Complaint, where they were now alleging that JusticeWorks required FRSs to work "off the clock," such that JusticeWorks was not paying its FRSs for all overtime hours worked. JusticeWorks' Answer and Defenses to the First Amended Complaint made short shrift of the allegations in the Amended Complaint. Thereafter, the Plaintiffs indicated that they were changing their theory of liability at least two more times, but did not follow through with another amended complaint. In their Motion for Conditional Certification and Brief in support thereof, Plaintiffs are now trying out yet another, new theory; namely, that because JusticeWorks was paid by the counties who engaged it only for direct client contact time, FRSs were not paid for worked time that was indirect time, *i.e.*, did not involve interaction with the client.

- At this point, the Plaintiffs are also on their *third* trial counsel.

- Founded in 1999, JusticeWorks provides human services to at-risk children, youths, and families and seeks to improve the lives of those in its programs. These services include adoption preparation, alternative education, behavioral healthcare, and independent living. Its signature services focus upon supporting at-risk children and youths and their families, with the overall goal of redirecting children and youth who are otherwise heading for recidivism and recurrent institutionalization and placing them on the path to being productive members of society. JusticeWorks contracts with individual counties to provide its services. Case workers, normally called "Family Resource Specialists ("FRSs") within JusticeWorks, are the front-line workers interfacing with the client families.

- JusticeWorks has a clear set of timekeeping policies requiring all employees to record all time worked, whether direct, indirect or otherwise. At hire, each Plaintiff signed off on those policies. *See* Exhibit E-1 to the Affidavit of Amanda Fine ("Fine Aff."), Exhibit E.

- JusticeWorks also has a clear "Open Door" policy, pursuant to which employees are free to raise any issue of concern with management. (Fine Aff,. ¶ 2, Ex. E;, *see* Ex. 3 to Ex. A (Shoop Depo.); Ex. 3 to Ex. B (Ellenberger Depo.); Ex. 4 to Ex. C (Nichols Depo.); Ex. 3 to Ex. D (Alcantara Depo.)). The policy expressly states that employees will not be retaliated against for raising an issue of concern.

- To facilitate billing the counties for the work its employees provided, JusticeWorks requires its FRSs to enter time as direct time, meaning time spent with the actual client, and indirect time, meaning time spent on a case when the client was not present with the FRS. The FRSs further document indirect time under various sub-categories, including travel time, administrative time, and wait time. Regardless of how the time is described and entered, it counts toward work time for which FRSs are paid. (Fine Aff. ¶¶ 16-19, Ex. E).

- Months after making its initial disclosures, including providing Plaintiffs' counsel with all time records and payroll information for the full-time FRSs, JusticeWorks deposed current Plaintiffs Shoop, Nichols, and Alcantara. There was more than ample time for Plaintiffs and their counsel to have reviewed JusticeWorks' Answer and Defenses to the Amended Complaint and the exhibits attached thereto and to use the time records and payroll information to determine exactly what Shoop, Nichols, and Alcantara were owed (if anything). However, not one of the Plaintiffs could point to an amount that she believed she was owed for unpaid time and, instead, vaguely discussed their general confusion about different areas of their time keeping for the purported basis of their inclusion in a class action against JusticeWorks.

- During her deposition, Caitlan Shoop acknowledged that she spent most of her employment working reduced or no hours. (Ex. A, Shoop Depo., at 31:21-32:11). She never submitted overtime to JusticeWorks and knows of no employee who was denied overtime. (*See id.* at 36:12-17). JusticeWorks' Defenses also revealed that JusticeWorks paid Shoop $680.15 in health insurance premiums that Shoop never repaid. (*See id.* at 33:19-35:5).

- Shoop could not respond to basic questions regarding what she was owed, did not know who her purported attorney Matthew Parmet was, was unaware of the filing of the Amended Complaint, was unsure whether she was willing to bear the costs of litigation, and did not know what the duties of a class or collective action representative are. (*See id.* at 9:24-10:17, 11:24-12:3, 16:18-21, 41:6-21).

- During her deposition, Philicia Nichols received a corrective action plan for failing to record enough hours worked. (Ex. C, Nichols Depo., at 8:7-9:25; Ex. 1 to Ex. C). The only time that Nichols submitted time sheets for over 40 hours, she received overtime pay. (Ex. C, at 15:13-16:3). She does not know anyone in Monroe County who was denied overtime pay. (*See id.* at 47:23-48:3). Her supervisor never told her not to submit overtime. (*See id.* at 17:5-12). During her deposition, Nichols was unable to describe a single specific

instance when she worked a set amount of time but was not paid for it. (See id. at 37:4-38:12). She was also unable to quantify what, if anything, JusticeWorks owed her in unpaid wages.

- Instead, Nichols appeared to assert that she did not record her travel time in JusticeWorks' time-tracker systems and that this, not unpaid overtime, was the basis for her claims of non-payment. (*See id*. at 38:13-24). However, when shown documentation to the contrary, she agreed that she had actually recorded travel time. (*See id*. at 42:11-46:14; Nichols Depo. Ex. 9). Indeed, she documented 123.97 hours in travel time that was not connected to direct client time, when she had a client in the car with her. For the period January to September, 2019, Nichols documented and was paid for 519.52 hours of indirect time. She also sought mileage reimbursement during this same period for 7,655.1 miles that she represented were incurred when she was driving with a client in the car with her, *i.e.*, travel that would be recorded as direct time. (Fine Aff. ¶¶ 28-29, Exhibit E-2).[1]

- During her deposition, Katherine Alcantara testified that the case is about mileage and overtime not being paid. (Ex. D, Alcantara Depo., at 6:14-7:17). In particular, Alcantara challenged that JusticeWorks stopped paying $550.00 for mileage during the pandemic. She testified that she did not raise the issue with HR. (*See* Depo. at 25). However, she also testified that she recorded time for travel between clients and paperwork. (*See id*. at 16:20-17:17). She also recorded the mileage when she drove outside of the county. (*See id*. at 39:4-10). Alcantara was also unable to provide any explanation of what she believes that JusticeWorks owes her or why. During the relevant period, JusticeWorks paid Alacantra $5,164,42 in overtime in 15 separate paychecks. Alcantara also logged 1,673.49 indirect hours, including at least 337.7 indirect travel hours, where a client was not riding with her. (Fine Aff., Ex. E-2).

- Notably, and while still employed with JusticeWorks, Alcantara raised an error in her paycheck with the company pursuant to its Open Door policy. (*See id*. at 26:13-29:5; Alcantara Depo. Ex. 7). The error was immediately corrected and JusticeWorks did not penalize Alcantara for doing so. (*Id*.).

- Plaintiffs also produced six declarations in connection with their Motion for Conditional Class Certification from Shoop, Nichols, Alcantara, Amanda Deaner, Danielle Lillie, and Kelly Abrahamson. All of the declarations are virtually word-for-word identical and in many respects contradict the deposition testimony of Shoop, Nichols and Alcantara. However, none of the declarants states that she was owed overtime that was not paid. None of the declarants offers a specific workweek or instances where she submitted overtime and it was denied, much less a specific example where she failed to record all time worked. The declarations likewise fail to offer a single specific instance where a Plaintiff was pressured not to record indirect time or where a supervisor wrote down or eliminated indirect time.

---

[1] Exhibit E-2 and Paragraphs of the Fine Affidavit are not an exact match because Exhibit E-2 is only capturing time from 2019 and not her 2018 time entries.

- In fact, JusticeWorks has affirmatively demonstrated that the declarants were paid overtime (except for Shoop, who never submitted it). JusticeWorks has likewise affirmatively demonstrated that each of the declarants recorded indirect time and was paid in full for it. Indeed, JusticeWorks believes that each of the Plaintiffs has been paid in full for all hours entered into its system. Deaner had $65.31 in overtime in one paycheck and entered 454.08 hours of indirect time. Abrahamson had $709.87 in overtime over 11 separate paychecks and entered 1,263.69 hours of indirect time. Lillie had $423.68 in overtime over four separate paychecks and entered 502.96 hours of indirect time. (Fine Aff., Ex. E-2).

## ARGUMENT

To maintain a FLSA collective action under 29 U.S.C. § 216(b), the Plaintiffs must demonstrate that the members of the collective action are "similarly situated." As this Court appreciates, courts apply a two-step certification process to FLSA collective actions: The first step is conditional certification and the second step is final certification, when the court "makes a conclusive determination as to whether each plaintiff who has opted-in to the collective action is in fact similarly situated to the named plaintiff." *See Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 130 (E.D. Pa. 2018) (quoting *Halle v. W. Penn Allegheny Health Sys., Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (marks omitted)), *leave to appeal denied by*, 2018 WL 4008363 (3d Cir. 2018). The "similarly situated" standard for certification " 'means that one is subject to some common employer practice that, if proved, would help demonstrate a violation of the FLSA.' " *Reinig v. RBS Citizens, N.A.*, No. 2:15-CV-01042-AJS, 2017 WL 8941217, at *9 (W.D. Pa. Aug. 2, 2017) (quoting *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017)), *vacated in part on other grounds*, 912 F.3d 115 (3d Cir. 2018).

As will be developed below, Plaintiffs fail to meet their burden of establishing that there is a similarly situated group of claimants. Contrary to Plaintiffs' suggestion, the standard for conditional certification under the facts of this case is not non-existent. Moreover, there are simply too many disparities among the Plaintiffs and no unifying purported claim for them to maintain a

collective action under the FLSA. Finally, and foundationally, there can be no collection action

without a claim, and none of the Plaintiffs actually asserts a claim against JusticeWorks.

A.    **Plaintiffs Mislead This Court on the Proper, More Stringent Standard Applicable to This Case.**

Plaintiffs seek to lower the bar for conditional certification so far that there is effectively

no bar at all. Indeed, Plaintiffs contend that conditional certification is "automatic," (*see* Plaintiffs'

Brief at 7), devoting nine pages of their lengthy brief to discussing the purported standard for

conditional certification under FLSA, (*see* Plaintiffs' Brief at 4-13), while relegating their actual

analysis of the standard as applied to the facts of this action to a mere half a page. (*See id*. at 11).

However, conditional certification is *not* automatic. *See, e.g.*, *Guillen v. Marshalls of MA, Inc.*,

750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) ("In presenting evidence on the appropriateness of

granting collective action status, the plaintiff's burden may be 'very limited,' …, and require only

a 'modest factual showing,' …, but the burden is not non-existent and the factual showing, even if

modest, still must be based on some substance.") (internal citations omitted).

Critically, where, as here, the parties have engaged in pre-certification discovery, at a

minimum, a more stringent "intermediate standard" for certification of the FLSA collective action

applies. *See, e.g.*, *Swank v. Wal-Mart Stores, Inc.*, 2018 WL 2684102, at *5-11 (W.D. Pa. June 5,

2018) (Hornak, J.) (conducting "more searching standard" of conditional certification of FLSA

collective action in a case that had proceeded for five years with "extensive discovery" and denying

certification under the FLSA and the PMWA), *denying reconsideration*, 2018 WL 3541861 (W.D.

Pa. July 23, 2018); *Villanueva-Bazaldua v. TruGreen Ltd. Partners*, 479 F. Supp. 2d 411, 415 (D.

Del. 2007) ("District courts in other circuits have adopted an intermediate approach to the

'similarly situated' inquiry when the parties voluntarily engage in discovery prior to a decision on

conditional certification.  In light of the procedural posture of this case, this court will join its

6

colleagues who require some factual showing that the similarly-situated requirement is satisfied."); *Jimenez v. Lakeside Pic-N-Pac, L.L.C.*, 2007 WL 4454295, at *3 (W.D. Mich. Dec. 14, 2007) (holding that because the parties had engaged in six months of pre-certification discovery, that "the Court will review Plaintiffs' allegations and affidavits in conjunction with the evidence gleaned through discovery"); *see also Titchenell v. Apria Healthcare Inc.*, 2011 WL 5428559, at *3 (E.D. Pa. Nov. 8, 2011) ("If discovery has commenced and the parties submit deposition testimony, declarations, and other evidence in support of their respective positions, application of the more stringent [modest factual showing] test is appropriate"); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 63 (E.D. Pa. 2009) ("We do find, however, that due to the amount of discovery in the present matter, it is more appropriate to evaluate the conditional certification motion under the stronger 'modest factual showing' standard."), *denying motion to amend*, 2010 WL 300027 (E.D. Pa. Jan. 25, 2010); *Bishop v. AT & T Corp.*, 256 F.R.D. 503, 506-07 (W.D. Pa. 2009) ("Given that discovery has progressed in the instant matter, it is appropriate to evaluate the conditional certification issue under the modest factual showing test.").

In support of their purported automatic "slam dunk" conditional certification standard, Plaintiffs mischaracterize *Evans v. Lowe's Home Centers, Inc.*, 2004 WL 6039927, at *2 (W.D. Pa. June 17, 2004). In *Evans*, the Court actually asserted that, "Typically, the first step results in automatic conditional certification because of the relatively light standard and minimal evidence….While I agree with Judge Schiller in *Smith v. Sovereign Bancorp* that this approach is too broad and places an undue financial burden on the defendants in such cases, *the record in this case allows for a more in-depth factual review in step one because of evidence received in connection with the Defendant's Motion for Summary Judgment*." *See id*. (citation omitted) (emphasis added).

Here, the availability of deposition testimony and extensive initial disclosures warrant a more stringent review, as well.  This case has been pending since early June, 2021, and through the filing of the original Complaint and Amended Complaint and two detailed Answers and Defenses.  JusticeWorks also took four initial depositions of the then known Plaintiffs.  As noted earlier, it made a voluminous production of Pennsylvania FRS time records and wage payments to Plaintiffs' counsel. Significantly, despite having the relevant time entries and payment records, none of the deponents could set forth an actionable claim. Each one of them had a different theory of why JusticeWorks purportedly had not paid them in full but ultimately could not detail the amounts they believe they were owed or why. Plaintiffs cannot continue to place an undue financial burden upon JusticeWorks simply because Plaintiffs' counsels' business model of filing cookie cutter suits based upon misclassification could not be supported in this case and they are now scrambling to find an alternative theory of recovery where none exists.

The testimony of Nichols underscores the appropriateness of applying the more stringent standard in this case and Plaintiffs' failure to articulate even a colorable, consistent theory of recovery for a class. The Plaintiffs' Brief and her declaration attempt to tell a story of non-payment and being discouraged from recording all of her time, but her actual deposition testimony tells a very different story. Indeed, Nichols is the only Plaintiff (out of the seven that have been involved in this case) that Plaintiffs even attempt to assert a substantive theory of recovery for in their Motion and Brief.  However, even this feeble attempt falls short and, as discussed at further length herein, finds no basis in the record.

Notably, Nichols actually received a corrective action plan for violation of company policies because she failed to record sufficient worked hours. (*See* Nichols Dep. at 8:7-9:25; Nichols Depo. Ex. 1). So, rather than being discouraged from recording her time, JusticeWorks

actually disciplined her for failing to record *enough* time. Nichols affirmed that she was aware of the timekeeping policies at JusticeWorks. (*See id*. at 11:6-18; Nichols Dep. Ex. 2). The only time that Nichols submitted time sheets for over 40 hours, she received overtime pay. (*See id*. at 15:13-16:3). She does not know anyone in Monroe County, where she worked, who was denied overtime pay. (*See id*. at 47:23-48:3). Her supervisor never told her not to submit overtime. (*See id*. at 17:5-12). Instead, Nichols' claim appeared to be based on her testimony that she recorded her travel time between clients but was not paid for this time other than being paid by the IRS for mileage, and her travel time did not count towards her forty-hour work week. (*See id*. at 42:11-46:14; Nichols Depo. Ex. 9).

However, it is clear that Nichols *was* paid for travel time throughout her employment with JusticeWorks. (*See Fine Aff." ¶¶ 27 and 28, Ex. E-2*). Plaintiffs make much of the fact that for the period January – September 2021, Nichols recorded only 76.65 hours of travel time for the period yet logged 7,665.1 miles of travel. Plaintiffs posit that from these facts, Nichols was either driving at warp speed or JusticeWorks was not paying her travel time. (Plaintiffs' Brief at 4). The truth is far less dramatic, and is also evident from the documents produced in discovery. Specifically, the 7,665.1 miles that Nichols claimed were all connected with "Direct Contact/Community Travel," meaning that she was driving with a client in the car. (*See Fine Aff., ¶¶ 28, 29, Ex E-2.*). During that same period, Nichols recorded and was paid for 519.52 hours of indirect contact time, thereby squelching any suggestion that she was discouraged from recording time and was not paid for time that JusticeWorks could not pass along to the county.[2] (*See id*.). She cannot be permitted to dodge

---

[2] Without meaning to suggest that this Court should dig into the merits of the case at this point in the proceedings, it is nonetheless noteworthy that the cookie cutter declarations that Plaintiffs offer all suggest that there is about 5-10 hours of non-client contact/indirect time per week in the FRS role and that JusticeWorks does not pay FRSs for that time. Here, Nichols' indirect time that she actually entered -- *and was paid for* – averaged just about 10 hours/week.

or negate her deposition testimony in the guise of Plaintiffs' advocacy of a conditional certification standard that is watered down to nothing.

**B.      This Action Lacks the Commonality Necessary to Demonstrate that the Plaintiffs are Similarly Situated.**

The standard for assessing whether plaintiffs are similarly situated for conditional certification is well-established. " 'Relevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment.  Plaintiffs may also be found dissimilar based on the existence of individualized defenses.' "  *Swank v. Wal-Mart Stores, Inc.*, 2018 WL 2684102, at *10 (W.D. Pa. June 5, 2018) (Hornak, J.) (quoting *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536-37 (3d Cir. 2012) (marks omitted)). Here, Plaintiffs have not even met the less stringent standard applicable to conditional certification of a collective action under the FLSA, where discovery has not yet been conducted, much less the more "intermediate" modest factual showing standard applied where, as here, substantial discovery has, in fact, occurred.

*Lawrence v. City of Philadelphia*, 2004 WL 945139, at *1-2 (E.D. Pa. April 29, 2004) is particularly instructive in this regard.  In *Lawrence*, the court rejected plaintiffs' claims that conditional certification under FLSA was proper where all plaintiffs are or were employed as Fire Service Paramedics with the City Fire Department's Emergency Medical Services Unit with the same general job descriptions.  Indeed, plaintiffs worked in different unit types, different platoons, different locations, and had different supervisors.  While conditional certification was found to be proper for the overtime claims, the "off-the-clock" claims did not involve regularly-scheduled time that was worked by all members of the purported class.  Given that "[t]he circumstances of those individual claims potentially vary too widely to conclude that in regard to their "off-the-clock"

10

claim, the [p]laintiffs are similarly situated," the court severed the "off-the-clock" claims for unpaid work performed outside of the regularly scheduled hours from the overtime claim during regularly scheduled hours and held that the "off-the-clock" claims may proceed individually. *See also See Swank v. Wal-Mart Stores, Inc.*, 2018 WL 2684102, at *5-11 (W.D. Pa. June 5, 2018) (Hornak, J.) (denying certification under FLSA and PMWA where common questions did not predominate in the determination of whether defendant's assistant managers' primary duty was management where individualized experiences predominated, and accounts of supervision were highly varied; conducting "more searching standard" of conditional certification of FLSA collective action in a case that had proceeded for five years with "extensive discovery"); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (denying conditional certification of FLSA collective action where opt-in plaintiffs worked at different subsidiaries and affiliates with different job titles at nine different job sites); *Smith v. T-Mobile USA, Inc.*, 2007 WL 2385131, at *8 (C.D. Cal. Aug. 15, 2007) ("Testing other aspects of Plaintiffs' [off-the-clock] claims-such as that some of their unpaid work was never recorded-would entail additional individualized attention, including depositions of managers and co-workers, because by definition such lost time is not documented."), *dismissing appeal*, 570 F.3d 1119 (9th Cir. 2009); *Diaz v. Electronics Boutique of Am., Inc.*, 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005) ("[Plaintiff's] allegations-*viz*, that he worked 'off-the-clock' without compensation and that his timesheets were altered to delete overtime hours worked-are too individualized to warrant collective action treatment.").

This action falls squarely into *Lawrence* and the cases cited directly above. JusticeWorks had clear policies stating that all worked time must be recorded. (Ex. 1 to Fine Aff.).  It is not disputed that overtime was approved at the county level by the FRS's immediate supervisor.

JusticeWorks services 53 Pennsylvania counties. During the time at issue, there were a total of 60-69 supervisors of FRSs. (*See* Fine Aff. ¶¶ 3, 5). Hence, this court should deny conditional certification.  *See Ray v. Motel 6 Operating Ltd. P'ship*, 1996 WL 938231, at *4 (D. Minn. 1996) (denying certification where the "official written policy dictates that overtime will be paid in compliance with the FLSA," and "approval of overtime is controlled by area supervisors," such that any illegal scheme existed on a "decentralized level," as in this action); *Holmes v. Kelly Servs. USA, LLC*, 2017 WL 3381415, at *7 (E.D. Mich. Aug. 7, 2017) (holding that plaintiffs cannot say anything about "off-the-clock" work where claims were based on "rogue supervisors"). In this case, the Plaintiffs' "off the clock" claims are intensely individualized. A variety of tasks, from record-keeping, to travel time, to internal meeting and wait time fall under the heading of indirect time, and travel time varies widely from county to county and FRS to FRS. The Plaintiffs allege that their unpaid work was never recorded. Thus, as in the *Smith* case, the never-recorded time will entail additional individualized attention, "including depositions of managers and co-workers." 2007 WL 2385131, at *8.

Even more challenging than the *Smith* and *Diaz* cases cited above, the FRSs in this case are ***salaried*** non-exempt employees. Thus, this is not just a case of allegations of working "off the clock."  Rather, each Plaintiff must also establish whether, and to what extent, the alleged "off the clock" hours even mattered. Being paid on a salaried basis means that the FRSs were already paid for 40 hours per work week, whether they worked them or not. The Plaintiffs must therefore individually establish for each work week how many hours (if any) exceeded the 40 that JusticeWorks already paid them for. *See Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 611-12 (E.D. Pa. 2015) (holding that employee failed to allege plausible FLSA overtime or "gap time" claim despite evidence that he had $23,370.00 in unpaid wages over three years where he did not present

evidence of hours worked or hourly rate paid so it could be determined if paid over FLSA minimum). Plaintiffs do not even feign an effort to meet this standard.

Moreover, JusticeWorks has a written Open Door policy in which employees are encouraged to raise issues of concern with management. The Open Door policy expressly states that the employee "will not be adversely affected in any way" because the employee invokes the Open Door policy. JusticeWorks raised as its Fourth Defense the failure to invoke the Open Door policy. The applicability of this defense will vary from FRS to FRS. For example, Alcantara actually did raise an underpayment issue with JusticeWorks, and JusticeWorks immediately corrected her pay. She suffered no adverse consequences for calling a short in pay to JusticeWorks' attention. Alcantara's prior challenge of her pay places her in a different, significant factual circumstance from other Plaintiffs, including the lead plaintiff, Shoop, who did not challenge their pay. It also makes Alcantara's current claim for underpayment less credible, yet another issue that will separate her from the other Plaintiffs.

**C.**     **The Presence of a Claim Is a Necessary Pre-Requisite to Conditional Class Certification and the Lack of Such a Common Claim Further Establishes the Fact That the Plaintiffs are Not Similarly Situated.**

Plaintiffs cannot escape denial of certification merely by baldly alleging in nearly identical declarations that they are victims of a common, unwritten policy by JusticeWorks regarding limits on recording indirect time without establishing the existence of a claim that warrants certification in the first instance. Mere allegations of a common policy are not dispositive. *Bishop*, 256 F.R.D. at 506-07 (holding that mere allegation of common policy by the defendant is insufficient). Similarly, simply because there may be common questions of law and fact regarding JusticeWorks' timekeeping policy, overtime policy, and the Plaintiffs' "off-the-clock" allegations does not mean that a class action is warranted. A commonality of certain facts between claims is

irrelevant if Plaintiffs have no claim upon which relief may be granted. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification … is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.") (citation and marks omitted, decided under Rule 23).[3] Here, there is no such claim. *See Sheffield*, 211 F.R.D. at 413 ("Putative [collective] members must share more than a common allegation that they were denied overtime or paid below the minimum wage. The [collective] members must put forth a common legal theory upon which each member is entitled to relief."); *Pfohl v. Farmers Ins. Group*, 2004 WL 554834, at *9 (C.D. Cal. March 1, 2004) ("In sum, while a policy or plan may be relevant to the inquiry of certification, it cannot be the sole factor in light of the other issues under the FLSA.").

Further underscoring the pronounced individual nature of the Plaintiffs' situations and the nature of the fishing expedition that Plaintiffs seek to undergo in connection with conditional class certification and the continued litigation of this matter are the facts surrounding Shoop, the lead plaintiff. Shoop does not present any claim, much less a claim typical to the purported class as a whole. As demonstrated above, Shoop was on unpaid medical leave for over five months from November 3, 2019 through March 19, 2020 of her approximately eleven months working for

---

[3] Plaintiffs' Brief does not mention their pending state law claim under the Pennsylvania Minimum Wage Act ("PMWA") and JusticeWorks likewise does not view this briefing on conditional certification to require any briefing on the state law claim.  Nonetheless, Rule 23 cases do offer guidance in deciding whether collective action certification is proper. *Ruiz v. Serco, Inc.*, 2011 WL 7138732, at *6 (W.D. Wis. Aug. 5, 2011). It is apparent from the discussion of Shoop's factual background that she is not typical of the putative class and cannot meet the standard for being a proper lead plaintiff.  *See McKinney v. Chester County*, 2021 WL 409975, at *4 (E.D. Pa. Feb. 5, 2021) (dismissing FLSA and PMWA overtime claims where plaintiff failed to allege specific week where he worked more than forty hours).

JusticeWorks. (*See* Ex. A, Shoop Depo., at 31:21-24). Shoop never returned to work after her leave.  (*See id*. at 34:18-21). Further, in September 2019, her doctor severely limited her work hours to no more than four hours per day, or 26 hours a week, for another two months, because of her pregnancy. (*See id*. at 31:25-32:11). Shoop was not entitled to overtime from September 2019 through March 2020, approximately seven months of her eleven months of employment, because she was either on unpaid leave or did not work forty hours per week at JusticeWorks and she does not describe a single instance in which she submitted overtime for payment much less a time when she was allegedly not paid for overtime during the remaining four months of her employment. (*See id*. at 32:14-22). If anything, and in further distinction from the other Plaintiffs, Shoop actually was overpaid and owes JusticeWorks $680.15 in healthcare payments that JusticeWorks advanced during her maternity leave.

This case is directly analogous to *Foster v. Kraft Foods Global, Inc.*, 285 F.R.D. 343, 348-49 (W.D. Pa. 2012) (Rule 23 case), in which the court summarily denied class certification in holding that the typicality element was not met where the lead plaintiff only worked a total of sixteen days during the relevant time frame and was placed on disability leave and never returned to work. *See* 285 F.R.D. at 348-49.  Significantly, Shoop also never attempted to submit time sheets for overtime pay. (*See id*. at 36:12-17); *see McKinney v. Chester County*, 2021 WL 409975, at *4 (E.D. Pa. Feb. 5, 2021) (dismissing FLSA and PMWA overtime claims where plaintiff failed to allege specific week where he worked more than forty hours). Also setting Shoop apart, JusticeWorks advanced $680.15 to her for health insurance during her medical leave, which she has thus far not repaid.

To cloak the foundational problems with conditional certification exposed in the documentation and deposition testimony, Plaintiffs presented virtually identical, "cookie cutter"

conclusory declarations. Each declaration simply offers broad general statements of no particular import and then parrots a belief that regardless of JusticeWorks' clear policies requiring the recordation of all time worked, there was nonetheless an overall policy of ignoring the written policy and only paying FRSs for time spent in actual contact with a client. The declarations contradict deposition testimony and documentary evidence affirming that the Plaintiffs were paid for indirect time and overtime and that Plaintiffs recorded indirect time (including travel time). The declarations contain no operative facts that specifically relate to each Plaintiff. Significantly, none of the declarations describes a specific instance where a named supervisor disallowed indirect time, altered a timesheet to eliminate indirect time, or expressly pressured the Plaintiff not to record specific indirect time. Similarly, not one declaration points to *any* specific week in which the Plaintiff claims to have worked a certain number of hours, but was paid for fewer hours. Despite the fact they have all the records necessary to make that argument, there is not one viable claim for nonpayment in any of the declarations. Caselaw does not permit Plaintiffs to establish conditional certification on the basis of such insufficient declarations.

Plaintiffs cite *H&R Block, LTD v. Housden & Beard*, 186 F.R.D. 399, 400-01 (E.D. Tex. 1999) for the proposition that some evidence of a single decision, policy, or plan is sufficient to achieve conditional certification. However, *H&R Block **denied*** conditional certification based on conclusory allegations in affidavits. Here, Plaintiffs present virtually identical, "cookie cutter" affidavits of the exact type that *H&R Block* disapproved. The Plaintiffs' declarations are an obvious attempt to do an end-around discovery, to the point of contradicting deposition testimony and seeking to put forth the positions of the later added opt in Plaintiffs (*i.e.*, Deaner, Lillie and Abrahamson) without subjecting them to rigorous questioning by JusticeWorks' attorneys, again a tactic that the courts disallow. *See Hinojos v. Home Depot, Inc.*, 2006 WL 3712944, at *3 (D.

Nev. Dec. 1, 2006) ("In particular, the Court is concerned about the contradictions between plaintiffs' declarations and their deposition testimony, which show the importance of cross-examination of each plaintiff."). Notably, the *H&R Block* court admonished Plaintiffs for engaging in a fishing expedition. *See H&R Block*, 186 F.R.D. at 401 ("Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses.") (citation and marks omitted).

In this dearth of factual support, the Plaintiffs base their belief that they were not paid for indirect time upon their counsels' contention that the counties paid only for direct client contact. The factual problem with that contention is that JusticeWorks negotiates its contracts county by county. Some counties pay only for direct client contact, others pay for all time spent on a case, and still others fall in between. Furthermore, what the county pays JusticeWorks per hour also varies county by county, although all counties pay well in excess of what JusticeWorks pays to the FRSs (straight and overtime). (*See* Davin Aff., *passim*). Hence, the declarations ultimately serve only to highlight that there is actually no overarching commonality of facts. The so-called incentive for discouraging the Plaintiffs from recording their time varies by county and in some counties does not exist at all. Under these facts, the Plaintiffs simply are not similarly situated; their situation continues to vary county to county. And, in any event, the Plaintiffs were paid for their indirect time.

In *Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255, 263 (S.D.N.Y. 2017), the court refused to grant conditional certification based on declarations of a small number of plaintiffs where they failed to provide any details regarding their observations and conversations that formed the basis of their claim that there was a *de facto* policy that 1,100 managers perform non-exempt work. Here, Plaintiffs' declarations are similarly devoid of any factual support regarding the

alleged observations and conversations at issue. Other courts have similarly denied conditional certification where claims were based on a *de facto* policy to violate a written policy requiring the employer to pay for working through meal breaks. *See, e.g.*, *Saleen v. Waste Mgmt., Inc.*, 2009 WL 1664451, at *4-5 (D. Minn. June 15, 2009); *see also Thompson v. Speedway SuperAmerica LLC*, 2009 WL 130069, at *10-11 (D. Minn. Jan. 20, 2009) (holding that plaintiffs have not established a colorable basis for their claim that the employer implemented a corporate decision to ignore its published policies and refuse to compensate employees for certain tasks); *West v. Border Foods, Inc.*, 2006 WL 1892527, at *9 (D. Minn. 2006) (noting that plaintiffs' "alleged violations are contrary to the Defendants' official written policy, which precludes store managers from requiring employees to work off-the-clock and requires payment of time and one-half for all overtime hours worked").[4]

Courts demonstrate a healthy distrust for canned statements that fail to meet basic rules on admissibility, such as Plaintiffs offer in their declarations. For example, Plaintiffs have failed to demonstrate factual support for their contentions that other FRSs would opt-in to a collective action, to identify the specific conversations that they had with co-workers (including the identity of the co-workers), and to offer details or a basis to support their broad observations, experiences, *or claims.* Consequently, this Court may join other courts in simply disregarding the declarations or declining to allow the declarations to carry conditional certification. *See, e.g.*, *Xin Li v. Chinese Bodyworks, Inc.*, 2020 WL 468344, at *3 (D. N.J. Jan. 27, 2020) (denying conditional certification where plaintiff's affidavit lacked factual support for its "blanket assertion[s]"); *Combs v. Twins*

---

[4] Other courts have denied conditional certification of a collective action under similar circumstances. *See, e.g.*, *Andersen v. Wells Fargo Fin., Inc.*, 2012 WL 12871956, at *4-5 (S.D. Iowa Dec. 11, 2012) (rejecting cookie cutter affidavits); *Dix v. Rcsh Operations, LLC*, 2020 WL 6915046, at *5 (M.D. Fla. Nov. 24, 2020) ("Although plaintiffs' burden at this stage is not heavy, it is not invisible.") (citation and marks omitted).

*Group, Inc.*, 2016 WL 7230854, at *3 (S.D. Ohio Dec. 14, 2016) ("Permitting this case to proceed as a collective action on such little evidence would effectively eliminate the requirement that plaintiffs must make at least a 'modest factual showing' that they are similarly situated to obtain conditional certification."); *Ji v. Jling Inc.*, 2016 WL 2939154, at *5 (E.D.N.Y. May 19, 2016) (denying conditional certification where affidavits lacked foundation and concluding that the bar for certification was not so "low"); s*ee also Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, 2009 WL 1515175, at *3 (W.D. Pa. June 1, 2009) ("Only admissible evidence may be considered in deciding a motion for conditional class certification.") (citation and marks omitted); Fed R. Civ. P. 56(c)(4) (declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters asserted").

At root, the declarations' vague assertions only highlight that the Plaintiffs are unable to assert an actual claim for unpaid wages. JusticeWorks is not asking this Court to weigh the credibility of competing witnesses.   Under the above-discussed authority, the Plaintiffs have offered no actual relevant facts; only JusticeWorks has done so. Plaintiffs have not adduced any real evidence of non-payment. In contrast, JusticeWorks has offered payroll records and other documentation and particularized affidavits. Whether the Plaintiffs have failed to do their homework or they did actually review the produced records and could not find an incident of non-payment is unclear. What is clear is that they do not have a cognizable cause of action, despite numerous bites at the apple through various amended pleadings, shifting theories, and self-serving declarations. Without a real claim, there is no class or collective action.

**D.    The Cases That Plaintiffs Cite to Avoid Denial of Conditional Certification are Inapposite.**.

Plaintiffs' reliance upon *Loy v. Rehab Synergies, LLC*, 366 F. Supp. 3d 847, 854-58 (S.D. Tex. 2019) is misplaced.   *Loy* involved an alleged written policy regarding productivity requirements, as opposed to an alleged unwritten policy that contradicted an express, written policy. *Amador v. Morgan Stanley & Co.*, 2013 WL 494020, at *7 (S.D.N.Y. Feb. 7, 2013), is likewise distinguishable.  It preceded the *Brown* case, discussed above, which criticized *Amador*. *Amador's* holding was driven, in part, by the failure of the Second Circuit (or the Southern District of New York) to adopt the heightened standard of review endorsed in this District Court's opinion in *Swank* and similar cases. It is also clear that the *Amador* court was presented with detailed evidence of significant pressure and of actions by Morgan Stanley's managers to force employees to work "off the clock," unlike the broad and unsupported cut and paste declarations offered in this action. *Kyem v. Merakey USA*, No. CV 19-5577-KSM, 2021 WL 1732501, at *4 (E.D. Pa. April 30, 2021) is likewise factually distinguishable. Expressly noting that the plaintiffs had to "provide more than unsupported assertions or the allegations in his complaint," and had to present affirmative evidence to attain conditional certification, the *Kyem* court relied upon admissions from the employer, pay records, excerpts of the employee manual, and detailed affidavits from the plaintiffs. In granting conditional certification, the *Kyem* court noted that the employer had first contended that the FLSA did not apply and then unfairly changed position at the last minute and that the timesheets "lend credence" to the allegations that overtime was not paid when billable and non-billable time exceeded 40 hours.  Of course, none of those factors applies here. The opposite is true.

This Court's decision in *McConnell v. EN Engineering, LLC*, 2020 WL 6747991 (W.D. Pa. Oct. 8, 2020) is likewise distinguishable. The case involved FLSA and PMWA and Kentucky Wage and Hour Act claims and alleged payments of straight time for overtime.  *See id*. at *1.  EN

Engineering argued that the proposed collective consists of up to 849 "heterogenous claimants who worked in [over 30] different locations, in [at least 31] different positions, for different clients and supervisors," with "wildly diverse individualized experiences." *See id.* at *4. However, and fatal to EN Engineering's attempt to avoid conditional certification, it "conceded that the 849 putative class members, despite dissimilarities, are all Straight Time Workers." Thus, all 849 EN Engineering employees had been subjected to the same policy and had been uniformly paid straight time for overtime, much like a misclassification case, where there is a single foundational legal issue about whether the employer's overall approach to the payment of wages was correct. In contrast, the instant matter is not just an "off the clock" case, but one with layer upon layer of differences (ranging from the supervisor who approved time and overtime, claimed hours not paid, relevance to base 40-hour salary, to contract terms in effect for each county) and where there is no single foundational legal issue. There is likewise no concession by JusticeWorks that it did not pay the FRSs for all hours worked, that it discouraged the recordation of indirect time, and that it did not pay FRSs for all indirect time.[5]

**E.**    **Plaintiffs' Proposed Order Impermissibly Greatly Expands the Putative Class and Enables Plaintiffs' Counsel to Continue to Harass JusticeWorks' Employees.**

While JusticeWorks does not believe that conditional certification is appropriate, in the event that this Court concludes otherwise, it should not enter the Plaintiffs' proposed order. In two major respects, JusticeWorks objects to the proposed order as overreaching and inviting abuse.

---

[5] *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002), *Grayson v. K-Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996), *cert. denied*, 519 U.S. 982 (1996), and *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) all involve ADEA claims not FLSA claims. *Kaiser v. At the Beach, Inc.*, 2010 WL 5114729 (N.D. Okla. Dec. 9, 2010) is inapposite because the claim is premised on a misclassification theory.

First, without amending any pleading or advising the Court or JusticeWorks of a change, the Plaintiffs greatly expand the scope of the class/collective action in their proposed order.  Both the Amended Complaint and the Rule 26(f) Report filed with this Court clearly state that the proposed class/collective action is:

> All individuals employed by Defendant in Pennsylvania as Family Resource Specialists in the last three years who were paid a salary and were classified as non-exempt ("Collective Action Members")

(Docket 25, p. 7, ¶ 64).[6]  In the proposed order, the proposed class/collective action is markedly different:

> Current and former Family Resource Specialists employed by JusticeWorks YouthCare, Inc. who were assigned at least 30 direct contact hours in one or more workweeks in the three years from June 3, 2018, to the present, but were not paid for all hours worked over 40 in a workweek on an hourly basis at a rate of at least 1.5x their regular rate.

This new language not only greatly expands the class by seemingly including FRSs beyond Pennsylvania despite the fact that the only Plaintiffs involved in the case are based in Pennsylvania, Plaintiffs are seemingly only maintaining claims related to the Pennsylvania County contracts they requested pursuant to the Right to Know Law, the pendent Pennsylvania-centric PMWA claim, and the fact that Plaintiffs' counsels' own email solicitation limited the proposed FLSA class to Pennsylvania FRSs.  (*See* Email, p. 2, Exhibit E-4 to Amanda Fine Affidavit, Exhibit E).  This expanded class definition also places a tremendous new burden on JusticeWorks, who would no longer simply be identifying salaried non-exempt FRSs, but would now also have to search through

---

[6] The FLSA description in the First Amended Complaint omits "Pennsylvania" from the class description.  However, the inclusion of the PMWA claim, along with the facts that (a) all Plaintiffs are Pennsylvanians and (b) the Plaintiffs only address contracts between JusticeWorks and Pennsylvania counties (which is the basis for the newest iteration of the FLSA claim) make it clear that the FLSA claim is also Pennsylvania based.

records to identify any FRS – even FRSs who were part time or paid by the hour – who might for one isolated week somewhere have worked over 30 hours. Worse still, this new language seeks employees with 30 hours in any work week, but overtime is not owed until the employee works more than 40 hours in a workweek. Ultimately, this expansion is another example of the Plaintiffs' on-going attempt to misuse this proceeding as a fishing expedition, this time more surreptitiously.

Second, JusticeWorks objects to providing the telephone and cell phone numbers of the putative class members, both because that information could lead to disruption in JusticeWorks' care for its clients and because Plaintiffs have a history of abusing such information. While JusticeWorks acknowledges that this Court has broad discretion on setting notice of conditional certification, email is nonetheless a sufficient, prompt method of providing notice. FRSs use their cellphones for work purposes, specifically to stay in touch with client families who often have emergencies. As already noted in this Brief, Plaintiffs have badgered JusticeWorks employees even after they have refused to join this lawsuit. JusticeWorks' employees should neither have a critical client communication channel clogged with Plaintiffs' solicitations nor have their days unnecessarily interrupted with intrusive communications from Plaintiffs. *See, e.g.*, *Bellan v. Capital BlueCross*, 496 F. Supp. 3d 854, 860 (M.D. Pa. 2020) (ordering notice to potential opt-in plaintiffs by e-mail, but refusing to do so by text message, and recognizing that notice by text message risked the "potential for overly-duplicative and unnecessary forms of notice"); *Ceuric v. Tier One, LLC*, 2018 WL 10230685, at *1 (W.D. Pa. Feb. 1, 2018) ("The Court does not perceive [notice by telephone] to be necessary and [it] present[s] the risk of venturing into the area of solicitation, rather than notice.").

## **CONCLUSION**

WHEREFORE, the Defendant, JusticeWorks YouthCare, Inc., respectfully prays that this Honorable Court enter an Order in the form attached hereto and deny Plaintiffs' Motion for Conditional Certification.


Dated:  April 18, 2022                                           Respectfully submitted,

                                                                                 */s/ Nicholas L. Fiske*
                                                                                 James R. Hankle
                                                                                 Pa. I.D. #36019
                                                                                 Suzanne L. DeWalt
                                                                                 Pa. I.D. #42072
                                                                                 Nicholas L. Fiske
                                                                                 Pa. I.D. #309696

                                                                                 Sherrard, German & Kelly, P.C.
                                                                                 535 Smithfield Street, Suite 300
                                                                                 Pittsburgh, PA 15222
                                                                                 (412) 355-0200

                                                                                 *Counsel for JusticeWorks*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing *Defendant's Brief in Opposition to Conditional Certification* has been served upon counsel listed below via CM/ECF Electronic Filing System this 18th day of April 2022:

Matthew S. Parmet
Parmet PC
3 Riverway, Ste. 1910
Houston, TX 77056
matt@parmet.law

Joshua Geist
Goodrich & Geist, P.C.
3634 California Avenue
Pittsburgh, PA 15212
josh@goodrichandgeist.com

Travis M. Hedgpeth
The Hedgpeth Law Firm, PC
3050 Post Oak Blvd., Suite 510
Houston, TX 77056
travis@hedgpathlaw.com

Stacy W. Thomsen
Siegel Law Group PLLC
4925 Greenville Avenue, Suite 600
Dallas, TX 75206
stacy@siegellawgroup.biz

*/s/ Nicholas L. Fiske*