## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAITLAN SHOOP, *individually and on behalf of all others similarly situated*, | ) ) ) ) | 2:21-CV-732 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | JUDGE MARILYN J. HORAN |
| JUSTICEWORKS YOUTHCARE, INC., | ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION

Plaintiff Caitlan Shoop, individually and on behalf of all others similarly situated, brings the present collective action against Defendant JusticeWorks YouthCare, Inc., for overtime payment pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.* and the Pennsylvania Minimum Wage Act (PMWA), 43 Pa. Stat. Ann. § 333.104.  (ECF No. 25). Plaintiffs' Motion for Conditional Certification is presently before the Court.  (ECF No. 45).

Following briefing, the Court held a Conditional Class Certification Hearing on May 16, 2022.  (ECF No. 54).  After the Conditional Class Certification Hearing, both parties were permitted to submit Supplemental Record References to the Court in support of their respective position concerning Plaintiffs' Motion for Conditional Class Certification.  Plaintiffs' Motion is now ripe for decision.  (ECF Nos. 58 & 59).

After considering Plaintiffs' Motion for Conditional Certification and accompanying Brief, (ECF Nos. 45 & 46), JusticeWorks's Response in Opposition and accompanying Brief, (ECF Nos. 51-53), Plaintiffs' Reply Brief, (ECF No. 57), Plaintiffs' Supplemental Record References, (ECF No. 58), JusticeWorks's Supplemental Record References, (ECF No. 59), and the arguments of counsel at the Conditional Class Certification Hearing, Plaintiffs' Motion for Conditional Certification will be denied.

1

## I.    Statement of Facts

Plaintiffs work or have worked at JusticeWorks as full-time Family Resource Specialists (FRSs).  (ECF No. 46, at 7).  JusticeWorks contracts with state and local governments to provide in-home social services, and it gets paid on an hourly basis for each "billable" hour of "Direct Contact" services performed by its FRSs.  (ECF No. 46, at 7).  Full-time FRSs are assigned about 30 hours of "Direct Contact" with clients each week.  (ECF No. 46, at 7).  This leaves about 10 hours for the FRSs to perform their "non-billable" work such as travelling between clients and documenting client visits.  (ECF No. 46, at 7).

## II.    Discussion

Plaintiffs request that the Court conditionally certify as a class: "Current and former Family Resource Specialists employed by JusticeWorks Youthcare, Inc. who were assigned at least 30 direct contact hours in one or more workweeks in the three years from June 3, 2018, to the present, but were not paid for all hours worked over 40 in a workweek on an hourly basis at a rate of at least 1.5x their regular rate."  (ECF No. 46, at 19).  Plaintiffs argue that they can satisfy their lenient burden of identifying a common policy or practice in violation of the FLSA, namely that the FRSs were regularly required to work more than 40 hours per week, for which they were not paid overtime wages.  (ECF No. 46, at 7).  JusticeWorks argues that the Court should deny conditional certification because Plaintiffs have failed to make even a modest factual showing that the Plaintiffs are similarly situated.  (ECF No. 53, at 1).

Section 7 of the FLSA requires employers to pay overtime to certain employees who work more than 40 hours in a work week.  29 U.S.C. § 207(a).  Under the FLSA, a plaintiff may bring a collective action on behalf of themselves "and other employees similarly situated" to recover unpaid overtime compensation.  28 U.S.C. § 216(b).  Courts in the Third Circuit "follow

2

a two-step process for deciding whether an action may properly proceed as a collective action

under the FLSA." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013).

At the first step, "the court makes a preliminary determination as to whether the named

plaintiffs have made a modest factual showing that the employees identified in their complaint

are similarly situated." *Id.*  A plaintiff's burden at the first step is light and can be met by

"produc[ing] some evidence, beyond pure speculation, of a factual nexus between the manner in

which the employer's alleged policy affected her and the manner in which it affected other

employees." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 195 (3d Cir. 2011), *rev'd on*

*other grounds sub nom.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013).  If this

burden is satisfied, "the court will 'conditionally certify' the collective action for the purpose of

facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi*, 729

F.3d at 243.  Given the "modest burden" at the first stage of the proceedings, "motions for

conditional certification are generally successful." *Id.*  "Courts typically rely on the pleadings

and affidavits of the parties to determine the suitability of conditional certification." *Waltz v.*

*Aveda Transp. & Energy Servs., Inc.*, No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27,

2016) (citation omitted).  "Generally, plaintiffs meet the standard by producing some evidence

indicating common facts among the parties' claims, and/or a common policy affecting all the

collective members." *Id.*  At the step one inquiry, the Court does not weigh the evidence, resolve

factual disputes, or reach the merits of plaintiff's claims.  *See Pereira v. Foot Locker*, 261 F.R.D.

60, 67 (E.D. Pa. 2009); *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 353 (W.D. Pa. 2018).

At the second step, "with the benefit of discovery," the court "makes a conclusive

determination as to whether each plaintiff who has opted into the collective action is in fact

similarly situated to the named plaintiff." *Camesi*, 729 F.3d at 243.  The second step can be

"triggered" by "the plaintiff's motion for 'final certification,' by the defendant's motion for 'decertification,' or, commonly, by both." *Id.* Determining whether class members are similarly situated during the second stage "generally requires the consideration of three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 10-948, 2011 WL 6372852, *2 (W.D. Pa. Dec. 20, 2011) (citations omitted). While the court looks at "whether 'similarly situated' plaintiffs do in fact exist," in the first stage, "at the second stage, the District court determines whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012). "Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete." *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 352 (W.D. Pa. 2018).

In this case, some discovery has already taken place and such developed record is also available for consideration. In support of their Motion to for Conditional Class Certification, Plaintiffs have provided the Court with repetitive affidavits asserting that Plaintiffs are owed overtime because they were directed not to record their time spent documenting client visits or their travel time while traveling to clients during the workday. (ECF Nos. 46-8, at 2; 46-10, at 2; 46-11, at 2; 46-12, at 2; 46-13, at 2). Plaintiff Caitlan Shoop states in her affidavit, "On average, I was working about at least 45 to 50 hours each regular week." (ECF No. 46-8, ⁋ 19). Plaintiffs Philicia Nichols, Amanda Deaner, Danielle Lillie, and Kelly Abrahmson's affidavits contain similar statements that they typically worked more than 40 hours per week but were not compensated for overtime work. (ECF Nos. 46-10, at 2; 46-11, at 2; 46-12, at 2; 46-13, at 2).

Ms. Shoop testified in her deposition that she was employed as an FRS in Lancaster County, Pennsylvania and that she was bringing the present lawsuit for "working overtime and not being compensated for it. Such as hours spent driving in between clients while we were still contacting clients, still working during that drive time." (ECF No. 52-1, at 10, 19). Later in the deposition, Ms. Shoop testified that the FRSs were "Not being compensated for the amount of work we actually do. So I'm working 40, 50 hours a week, with people work and drive time, and documentation. But only being compensated for 40 ours [sic] or 32.5, or whatever it was." (ECF No. 52-1, at 18). Ms. Shoop testified that she only submitted to JusticeWorks "the hours we had direct time with the client." (ECF No. 52-1, at 21-22). When asked, Ms. Shoop could not remember who instructed her to only submit direct client time to JusticeWorks. (ECF No. 52-1, at 22). As to overtime pay, Ms. Shoop cannot point to any specific unpaid overtime hours besides her conclusory allegations that JusticeWorks had a policy that FRSs could not submit overtime hours for indirect client time. (ECF No. 52-1, at 24). Ms. Shoop testified that she did not submit time sheets for overtime pay "Because it wouldn't go through. It was difficult to get approved." (ECF No. 52-1, at 36).

Ms. Nichols testified, "I did record our time, but we were told that our drive time was no longer counted as billable time. So that was not recorded. No. We were told the time driving from client to client was no longer billable." (ECF No. 52-3, at 12). Ms. Nichols stated in her deposition that her supervisors, Linda and Renee, told her not to record her drive time as billable time. (ECF No. 52-3, at 12). With regard to JusticeWorks's overtime policy, Ms. Nichols also testified that "They didn't physically tell me not to submit time sheets for overtime. But I only had one instance, I guess technically, where I actually submitted overtime. Because the other

hours weren't being tracked."  (ECF No. 52-3, at 17).  Like Ms. Shoop, Ms. Nichols cannot point

to any specific hours of overtime that she is due from JusticeWorks.  (ECF No. 52-3, at 15-16).

Ms. Alcantara testified that she worked as an FRS in Monroe and Pike Counties,

Pennsylvania and that "I had a case that was in Hazleton.  And that is outside your county.  And

that is the only time they actually paid for your mileage, if you are going outside of the county."

(ECF No. 52-4, at 21).[1]  Ms. Alcantara also testified that, when she did submit an overtime

request, that her request was approved, and she received overtime pay.  (ECF No. 52-4, at 26-27,

31-32).  Again, like Ms. Shoop and Ms. Nichols, Ms. Alcantara cannot point to any specific

hours of overtime that she is due from JusticeWorks.  (ECF No. 52-4, at 26).

JusticeWorks attached to its Response an affidavit from Amanda Fine, the head of

Human Resources at JusticeWorks.  (ECF No. 52-5).  In Ms. Fine's affidavit, she stated that she

always directed the FRSs to record their time traveling between clients and taking notes even if

this was considered "indirect time."  (ECF No. 52-5, ¶¶ 15-16).  JusticeWorks has provided

evidence that, on the date of their initial hire, Plaintiffs Shoop, Nichols, and Alcantara signed

JusticeWorks's "Time Tracking Policy," which states:

> **Full time nonexempt** employees will be paid their full salary with the
> expectation they will work 40 hours per week.  Nonexempt employees must
> record all of their time worked pertaining to JusticeWorks business including
> billable hours, administrative time, training, and travel to a client's home.
> Employees should <u>not</u> record commute time which is typically travel from home
> to first destination and from last visit to home or long breaks between client
> meetings when personal business is performed.  Breaks in the day which may
> consist of lunch, running personal errands, etc., will not be considered as worked
> time.
> Time spent completing notes, checking email, work phone calls, work related
> texting, etc. is considered work time and must be recorded.

---

[1] JusticeWorks attached to its Response Ms. Alcantara's pay stubs, which show that Ms.
Alcantara was reimbursed $275 in milage per paycheck, or $550 per month.  (ECF No. 52-4, at
48-102).

(ECF No. 52-1, at 98; 52-3, at 56; 52-4, at 45).  JusticeWorks has also provided evidence that if

any of the Plaintiffs had ever worked more than 40 hours per week, that they were compensated

for that time with overtime pay.  (ECF No. 52-4, 25-27, 31-32).  JusticeWorks also attached Ms.

Nichols' time keeping records, which show that Ms. Nichols reported her time to JusticeWorks

for documenting and travel.  (ECF No. 52-3, at 104-193).

Plaintiffs can point to no evidence other than their conclusory affidavits and deposition

testimony that they were not compensated for their documentation or indirect travel time

between clients.  Plaintiffs have not met their burden at the first step of the class certification

process because they cannot point to some evidence of a factual nexus between the employees

beyond mere speculation.  The named Plaintiffs work in different counties and for different

supervisors.  Additionally, Plaintiffs Shoop, Nichols, and Alcantara have not been able to

articulate a similar policy or practice with regard to how they were instructed to document their

travel and documentation time.  Plaintiffs have not produced enough evidence to indicate that

there are common facts among the named Plaintiffs' claims or among the class as a whole.

While the factual showing in support of conditional class certification is modest, Plaintiffs have

not provided the Court with sufficient evidence in support of their FLSA claim, especially where

ample discovery has already taken place in the case.  *See Swank v. Wal-Mart Stores, Inc.*, 2:13-

cv-1185, 2018 WL 2684102, at *10-11 (W.D. Pa. June 5, 2018) (declining to grant plaintiffs'

motion for conditional certification where ample discovery has been conducted and the plaintiffs

cannot point to evidence that they are similarly situated).  As such, Plaintiffs have not met their

modest burden of showing that they are similarly situated to support conditional class

certification.  Thus, Plaintiffs' Motion for Conditional Certification will be denied.  Although the

Court will be denying Plaintiffs' Motion for Conditional Class Certification, the Plaintiffs'

claims may still proceed on an individual basis.

### III.      Conclusion

Based on the foregoing, Plaintiffs' Motion for Conditional Class Certification will be

denied.  An appropriate Order shall be entered.


DATE: __May 31, 2022__

Marilyn J. Horan
United States District Judge